UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

JORGE SANTOS TORRES,

               Petitioner,

     vs.

RON BARNES,

               Respondent.

Case No:  C 11-1804 SBA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Jorge Santos Torres ("Petitioner") was convicted of second degree murder, Cal. Pen. Code § 187, for the stabbing death of Vincente Yuen ("Yuen"), following a jury trial in the Santa Clara County Superior Court.  Through counsel, Petitioner has filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2254.  He alleges two claims: (1) violation of due process under the fifth and fourteenth amendments based on the admission of gang evidence at trial; (2) ineffective assistance of counsel in violation of the sixth amendment based on trial counsel's failure to object to the gang evidence.  Having read and considered the papers submitted, and being fully informed, the Court DENIES the amended petition.

## I.    BACKGROUND

       The charges against Petitioner stem from an incident on May 3, 2003, in San Jose, California.  According to the prosecution, Petitioner and Andrew Flores ("Flores"), a childhood friend and Norteño gang member, were "cruising" in a white Honda driven by Flores in San Jose, California.  Traffic was heavily congested.  Yuen, a high school student, was walking towards a car full of girls and was near the Honda when Flores hit him.  In response, Yuen slammed his hand on the trunk of the car, which angered Petitioner.  Petitioner and Flores exited the Honda, and Petitioner attacked Yuen, fatally stabbing him

in the heart twice.  Petitioner claimed, however, that he was acting in self-defense and merely swung his knife "wildly" in response.  Petitioner denied being aware that he had stabbed anyone.

### A.   THE CALIFORNIA COURT OF APPEAL'S SUMMARY

The California Court of Appeal summarized the case against Petitioner, as follows:

***The Prosecution's Case***

James Cruz drove Vincente Yuen, Yuen's cousin Joseph Craig, and some friends, including Joshua Parras, from Hayward to the Cinco de Mayo festivities in San Jose on Sunday, May 4, 2003. Late that night, they drove into a USA gas station on Story Road and parked. Everybody got out of the car to see what was going on around them. The traffic was bumper to bumper and a lot of people were in the gas station, on the sidewalk, and in the street. Yuen and Parras stood on the sidewalk near the entrance to the gas station for a while talking to girls. Yuen then walked into the street towards a car full of girls. A white Honda Accord hit Yuen and almost hit Parras. Yuen became upset, yelled out "'hey,'" "'watch it,'" and then slammed his hands down on the trunk of the Honda. Two men, the driver and the passenger, got out of the Honda. Somebody yelled, "what's up," and Yuen responded. The Honda passenger rushed Yuen, and swung at him, and Yuen swung back while backing up. Other people got involved. Two men hit Parras in the face as he tried to defend himself.

The fighting moved from the street into the gas station. The Honda passenger grabbed Yuen's shirt. He made "a right roundhouse swing" towards Yuen's midsection, at least twice. The passenger had "a shiny object" in his clenched fist. He and the driver then retreated to the Honda and drove away, and everyone scattered. Yuen collapsed in the back of the gas station. His shirt was ripped and blood was coming from his chest area. John Rodriquez, a witness to the fighting, called 911 and officers arrived within minutes, but Yuen died at the scene from two stab wounds to the chest.

Parras received a small stab wound to the stomach. Officers found a knife blade at the scene. A criminalist analyzed a swab of blood taken from that knife blade and determined that the blood was Parras's.

Walter Jusino, who had just met Yuen that night, went into the street after the fighting stopped in order to get the license plate of the white Honda as it drove away. All he was able to remember was that the last three numbers of the plate were "808." He gave that information to the police at the scene. Jusino identified defendant at trial as the passenger from the Honda who stabbed Yuen.

Defendant was with Andrew Flores, a childhood friend, at Flores's home on the evening of Sunday, May 4, 2003. Late in the evening, Flores asked his sister if he and defendant could use her car, a white Honda Accord, so they could go to the Cinco de Mayo festivities. She agreed. Flores and defendant first went to a Jack in the Box on Tully Road to get something to eat. After that, they went cruising on Story Road. Near the USA gas station at the intersection of Story and McGinnis, Flores was "riding on the brake" of the Honda when the car "bumped" a man who was in the street.

A group of people, including the man Flores bumped, started pounding on the top of the passenger side of the Honda. Flores, who was not armed, stopped the Honda, opened the car door, and got out. Defendant also got out of the car. Flores looked over the roof of the car and asked what was going on. He walked towards the back of the car. Three or four men came towards him and confronted him. A fight ensued. After about 30 seconds, Flores heard somebody yell that someone had been stabbed. Everybody scattered. Flores and defendant got back in the Honda and drove away. Flores dropped defendant off at his house. When defendant got out of the car, Flores saw defendant throw something into his fenced yard.

Flores went home. He turned on his police scanner and learned that somebody had died. He also heard a license plate number being reported, including a part of his sister's license plate, the numbers "808."

Flores contacted defendant the next day, and asked defendant what he had done. Defendant said that he was fighting with a man, he became angry, he pulled out a knife, and he stabbed the man in the chest. Defendant said that he used bleach and water on the knife to get rid of the blood, and then threw the knife up on the roof of his house. Defendant also said that he was going to go to Mexico.

Flores removed the Honda's license plates and put other plates on it. He then went to stay with his uncle in Modesto. While there, he learned that he was wanted for murder. After contacting an attorney, he turned himself in on June 5, 2003. He remained in jail until, pursuant to a plea agreement, he pleaded guilty in October 2004, to being an accessory to murder.

John Paul Ortiz was driving his father's Hyundai when he met up with Flores and defendant, his childhood friends, on Story Road the night of May 4, 2003. Near the USA gas station, Ortiz heard a noise and saw a group of men surround Flores's car. Ortiz got out of his car when he saw Flores and defendant get out of their car. Several fights broke out and Ortiz saw Flores and defendant fighting with people Ortiz did not know. Ortiz did not join the fighting, and he lost sight of Flores and defendant for a while. When the fighting stopped, Ortiz saw Flores and defendant in the crowd. They all got back into their cars and drove away.

While Ortiz was on his way home, he received a call from defendant. Defendant told Ortiz to "lock your shit up, or something like that." Ortiz took it to mean, "park the car," "[j]ust go home." A day or two later, Flores contacted Ortiz and told Ortiz what defendant had told him. Flores asked Ortiz to call the police and report seeing a different license plate number. Ortiz agreed to do so. On May 7, 2003, Ortiz contacted the San Jose Police Department and reported that he was a witness to the fighting near the USA gas station. He said that, after the fighting, he saw two people he did not recognize speed away in a white Honda. He said that he remembered the license plate of the Honda ended in "888," not "808" as had been reported in the newspaper.

On May 14, 2003, the police received an anonymous tip directing them to Flores's home. There they found the white Honda in the garage. Ortiz spoke to the police again on May 21, 2003, and told them what he knew. Ortiz was arrested on June 5, 2003, and charged with being an accessory to murder. He entered into a plea agreement whereby he pleaded guilty to a misdemeanor in exchange for testifying truthfully at defendant's trial.

On September 15, 2005, defendant was a passenger in a car stopped in Morgan Hill for a routine traffic violation. Defendant, who was seated in the back of the car, originally identified himself as Giovanni Santos to the officer who stopped the car. The officer unsuccessfully ran that name and the date of birth defendant gave him. Defendant fled when the officer attempted to take him to the patrol car. Defendant was located the next day, hiding in the crawl space under his family's Morgan Hill residence.

***The Defense Case***

Defendant testified in his own defense as follows.

Defendant and Flores were at Flores's home on Sunday, May 4, 2003, when Flores's sister came home from work around 11:00 p.m. Flores asked his sister if they could use her car. She reluctantly agreed. Defendant and Flores drove to the Jack in the Box on Tully Road and stayed there for a while watching and talking to acquaintances. Flores then drove to Story Road, where the traffic was bumper to bumper and people were milling about.

As they approached McGinnis, near a gas station, defendant was talking to his girlfriend on his cell phone when he heard a bang on the hood of the car. He looked up and saw a crowd of people at the side of the car and heard more banging on the top and trunk of the car. He lowered his window a little and asked what was going on. He then heard a thud on the top of the car as if something had been thrown at it. He got out of the car and asked, "What's your problem?" Someone in the crowd said, "fuck you," and defendant responded, "Fuck you too."

Someone in the crowd took a swing at defendant and hit him on the left side of his head. He put up his left arm to block any additional blows and took a swing with his right arm. He did not hit anybody, but he was hit on the right side of his forehead. Then he was hit on the jaw and he fell to his right knee.

Defendant happened to have a friend's pocketknife on him. He had been cruising around with that friend earlier that day when he told the friend that he should not have the knife on him. The friend threw the knife on the seat of his car and defendant later picked it up and clipped it to his right pants pocket. After defendant fell to his knee, he pulled out the knife and opened it. With his left arm extended, he swung the knife "wildly" with his right hand "at no one, really." He grabbed something, which could have been somebody's shirt, and swung the knife again as he tried to get up. He did not think he hit anybody with the knife either time. However, his actions had the desired effect, because somebody said "he has a knife," and the people around him backed up.

Defendant stood up, looked around, and realized that he was in the gas station. He did not see that anybody was injured, and he put the knife in his pocket. Other scuffles were still going on. As he headed back to his car, somebody came up to him and they exchanged blows. He heard somebody yell that someone had been stabbed. He and Flores got back in their car and drove away. On the way home, defendant took the pocketknife out of his pocket and looked at it, but did not see any blood on it.

Defendant called Ortiz, who asked him what had happened. Defendant responded that he did not know. He told Ortiz to just go home. Flores took defendant home. Defendant checked himself and found only minor bruises and no blood. His girlfriend picked him up and took him to her apartment. He threw the knife in the garbage at her apartment the next morning. That afternoon, Flores came to the apartment and told defendant that somebody had died the night before. Flores asked defendant what he had done, and defendant responded that he did not know. He started crying because he thought that he could have been the one who killed the victim. He was afraid and did not know what to do, so he fled to Mexico that night. Within a month he learned from his family that he was wanted for murder. He returned to San Jose in early April 2005, and planned to turn himself in. He had spoken to a lawyer just two days before he was arrested on September 16, 2005. He is still not sure if he is the person who stabbed Yuen.

People v. Torres, 2009 WL 5070167, *2-4 (Cal. Ct. App. Dec. 28, 2009).

**B.   PROCEDURAL HISTORY**

Both Petitioner and Flores were charged with the murder of Yuen and taken into custody.  RT 335.  Ortiz was charged with being an accessory to murder.  Flores and Ortiz eventually entered into plea agreements and each pled guilty to being an accessory to murder.  RT 336, 602.

Petitioner proceeded to trial, and on June 18, 2007, a jury convicted him of second degree murder.  The jury also found that he personally used a deadly weapon, a knife, in committing the crime. CT 215-16, 682.  On September 5, 2008, the trial court sentenced Petitioner to fifteen years to life for the murder and a consecutive sentence of one year for the use of a knife.  CT 716-17, 719-20.

On December 28, 2009, the state court of appeal affirmed the judgment on direct appeal and denied Petitioner's state habeas corpus petition.  Petitioner subsequently challenged those decisions in separate petitions for review in the California Supreme Court, which summarily denied both matters on April 14, 2010 (Doc. 1 at 7-8; Doc. 1-1 at 24, 28), in case numbers S180074 (petition following habeas denial); and S180077 (petition following denial of direct appeal).

Petitioner thereafter filed a federal habeas petition in this Court.  Dkt. 1.  One of the claims alleged in the petition was an unexhausted claim for ineffective assistance of counsel based on the failure to request a limiting instruction on gang evidence.  Id. at 45-49.  After Respondent moved to dismiss the petition as a mixed petition, Petitioner filed a First Amended Petition which omitted the unexhausted claim.[1]  Dkt. 7-2.  The Court subsequently directed Respondent to answer the amended petition.  Respondent and Petitioner timely filed a response and Traverse, respectively.  Dkt. 9, 10.  The matter is now ripe for adjudication.

---

[1] Despite omitting his claim based on defense counsel's failure to seek a limiting instruction, both the First Amended Petition and Traverse repeatedly mention the lack of a limiting instruction as a basis for showing error and prejudice.  However, any claim for instructional error is not properly before the Court.  But even if it were, for the reasons below, Petitioner would not be entitled to habeas relief.

## II.     <u>STANDARD OF REVIEW</u>

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless:  (1) the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

The first prong of § 2254 applies both to questions of law and to mixed questions of law and fact.  <u>See</u> <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 407-409 (2000).  A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).  "When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue."  <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1098 (9th Cir. 2009) (citing <u>Carey v. Musladin</u>, 549 U.S. 70, 76-77 (2006)).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u>  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  <u>Williams (Terry)</u>, 529 U.S. at 411.  Rather, the petitioner must show that the application of Supreme Court law was "objectively unreasonable."  <u>Id.</u> at 409; <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam).

The second prong of § 2254 applies to decisions based on factual determinations. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). The last reasoned decision in this case is the California Court of Appeal's unpublished disposition issued on December 28, 2009.

## III.   **DISCUSSION**

As noted, Petitioner alleges two claims.  Claim One alleges that Petitioner was denied his due process right to a fair trial as a result of the trial court's allegedly erroneous admission of gang evidence.  Claim Two alleges that Petitioner's trial counsel rendered ineffective assistance by failing to object to the introduction of the gang evidence.  Each claim is discussed seriatim.

**A.     ADMISSION OF GANG EVIDENCE**

**1.     Background**

*a)     Flores*

At trial, the prosecution called Flores, the friend and gang member with whom Petitioner was a passenger when the attack on Yuen took place.  Despite the fact that he was present and directly involved in events underlying this action, Flores claimed he could not recall the bulk of the events that evening.  RT 340.

During trial, the prosecutor introduced a photo of Flores and asked him whether he was a Norteño gang member on May 5, 2003.  Torres, 2009 WL 5070167, *5.  Petitioner's counsel did not object.  Id.  Flores denied being a gang member.  Id.  However, Flores later admitted he was a member of "Barrio East Side" or "BES," a Norteño street gang.  Id.  The prosecutor then sought to mark a second photograph for identification.  This time, Petitioner's counsel objected on relevance grounds, arguing that there was no gang allegation and that the photos were inflammatory.  Id.  In response, the prosecutor argued that "in the gang culture, no witness is going to come in and testify against another," and that the gang evidence would show why Flores' professed inability to recall was "beyond unbelievable."  Id.  The trial court agreed that the testimony was relevant to Flores' credibility, but disallowed the presentation of photographs to show his gang membership.  Id.

Upon further questioning, Flores testified that it would be "a bad thing" if a gang member testifies against "someone else."  Id.  The prosecutor then asked Flores if he recalled seeing any Norteños or Sureños during the fighting.  Flores responded that he assumed that the majority of the people there were Norteños, and that Sureños "are not really out there like that" on Cinco de Mayo.  Id.  Flores also testified that the gas station where the stabbing occurred was near Sureño territory.  Id.  The prosecutor also queried Flores about gang fights.  Flores acknowledged that gang fights occur and that backing down from a fight is a sign of "weakness" that can make the gang "weaker," and conversely, choosing to participate in a fight could make the gang "stronger."  Id.

Referring to Petitioner, Flores claimed that he "never aligned himself as a Norteño" although he "hangs out" with a Norteño (i.e., Flores), and as a result, it would be "fair to say" that there was no reason for a Norteño to want to attack Petitioner.  Id.

To further explore the impact of Flores' gang involvement on his credibility, the prosecution called Edward Souza ("Souza"), Flores' retained counsel.  RT 652.  Souza testified that Flores had provided information about the events on the evening of May 2, 2003.  Id.   In turn, Souza set forth that information in a two-page proffer which he submitted to the assigned deputy district attorney on or about October 13, 2004, for purposes of negotiating a settlement.  RT 652-53.  Souza testified that Flores was "extremely nervous" about the contents of the proffer because the information was going to be seen by law enforcement officials.  RT 657-658.  In particular, Flores "feared extreme retaliation" as a result of being labelled a "snitch," and that "other inmates, gang members, and gang associates" would retaliate against him or his family.  RT 658, 683, 685, 687. The prosecutor proceeded to elicit from Souza the information about the killing that Flores provided in the proffer which Flores claimed not to recall.  RT 660-72.

### b)     Ortiz

On the evening of the incident, Ortiz, a childhood friend of Petitioner and Flores, met up with both individuals on Story Road in San Jose, where the incident occurred. Torres, 2009 WL 5070167, *2.  In a statement given to the San Jose Police Department on June 5, 2003, Ortiz told the interviewing police officer that he saw a group of individuals surrounding Flores' Honda and one of them hit the back of the car.  CT 416, 427.  At that point, he saw both doors to the Honda "swing open" and Flores and Petitioner exit the Honda, at which point Ortiz thought, "shit, here we go."  CT 428.  Ortiz stated that Petitioner and Flores began individually fighting one-on-one, but the fighting escalated and more persons became involved.  CT 429.  Ortiz told the police that Flores had confided that someone "got smoked" (i.e., died).  CT 452.  Flores also told Ortiz that Petitioner was responsible for the killing "but he doesn't want to come out and say that."  CT 454, 459-60, 465.  Ortiz reported that Flores was unaware that anyone had been killed, but that Petitioner

informed him as such in the car on their way home from the gas station where the fight occurred.  CT 460, 462.

At trial, Ortiz testified in a manner inconsistent with his statement to the police. While previously informing the officer that he observed someone hitting or "punching" the back of the Flores' Honda, Ortiz now claimed that he did not remember if anyone hit the car.  RT 391, 393.  And whereas Ortiz previously stated that he observed the doors to the Honda swing open and both Flores and Petitioner exit the Honda, Flores was much more equivocal.  Ortiz testified that he only "vaguely" recalled what transpired, but that he remembers seeing "everybody jump out of their cars . . . and then this big fight ensued," RT 388, which "explode[d] out of nowhere," RT 521.  Ortiz further claimed that a "big wave of people" came in every direction, RT 390, 396, 514-15, and the fight "engulfed" petitioner and Flores, who did go "towards the fight."  RT 396.

Though Ortiz had previously told the police officer that he specifically saw Flores and Petitioner engaged in a one-on-one fight after exiting the Honda, at trial, Ortiz testified that he did not know if Petitioner was fighting with one person or multiple individuals.  RT 390, 471-72.  Ortiz also claimed to not remember Flores telling him that he (Flores) was not involved in the stabbing.  RT 419, 439-440.  He also flatly denied that Flores had told him that Petitioner stabbed someone at the gas station.  Id.

### c)     Court of Appeal's Decision

In his direct appeal, Petitioner alleged that the admission of evidence relating to gangs resulted in an unfair trial.  More specifically, he argued that there was no evidence that the murder was gang-related or that he or the victim was a gang member, and therefore such evidence was irrelevant to the issue of who murdered Yuen.  He also asserted that admission of this evidence was unduly prejudicial.  The Court of Appeal rejected these contentions.

As an initial matter, the court found that while Petitioner objected to some of the gang evidence on relevancy grounds, he did not object when the prosecutor first asked Flores about his gang membership, and "[c]onsequently any objection based on the

prejudicial effect of the evidence was waived."   <u>Torres</u>, 2009 WL 5070167, *11.  That

aside, the court found that the trial court did not abuse its discretion in allowing the

evidence.  The Court of Appeal explained that evidence showing a witness is afraid of

testifying or fears retaliation is relevant to the credibility of that witness and is therefore

admissible, even in the absence of direct threats to the witness.  <u>Id.</u>  The court explained:

> We find that the trial court could have reasonably concluded
> that the probative value of the gang evidence was not
> outweighed by any emotional bias it may have invoked. ***The
> challenged gang evidence was relevant and admissible on the
> issue of witness credibility and to suggest possible gang
> retaliation as a reason for the witnesses' asserted lack of
> memory of the events before and after the stabbing.*** . . .
> Flores, who admitted on direct examination that he was a gang
> member, testified that he did not remember a lot of things that
> happened on the night of the stabbing incident or between that
> time and when he turned himself in.  He also testified that it
> could be "a bad thing" if a gang member testifies against
> "someone else." Flores then failed to return to court the next
> day for cross-examination. In the meantime, Ortiz testified that
> he knew Flores was a gang member, that he did not know if
> defendant was a gang member, and that he did not want "to be
> snitching" on good friends because he was "afraid of"
> retribution by "maybe an outside party." And Craig, Yuen's
> cousin, repeatedly testified that he could not remember the
> stabbing incident, so a DVD of his police interview on May 5,
> 2003, was later played for the jury. During that interview, Craig
> said that the passenger in the car that hit Yuen (defendant) was
> wearing a navy blue Boston baseball pullover with a "B" on it.
> During Ortiz's police interviews, Ortiz said that he knew that
> BES members wear clothing with the Boston Red Sox "B."
>
> ….
>
> ***Even if we were to find that not all of the gang evidence
> should have been admitted and that the admission of some of
> the gang evidence was erroneous, we cannot say that it made
> the trial fundamentally unfair****. (*<u>See</u> Estelle v. McGuire (1991)
> 502 U.S. 62, 70.)  And, "[a]bsent fundamental unfairness, state
> law error in admitting evidence is subject to the traditional
> <u>Watson</u> test: The reviewing court must ask whether it is
> reasonably probable the verdict would have been more
> favorable to the defendant absent the error. . . . [¶]  On the
> record before us, we cannot say that it is reasonably probable
> the verdict would have been more favorable to defendant absent
> the admission of the gang evidence.

<u>Id.</u>, *12 (emphasis added).  As noted, under AEDPA, the Court of Appeal's decision is

entitled to substantial deference and is presumed correct.  28 U.S.C. § 2254(e)(1); <u>Nevada</u>

<u>v. Jackson</u>, — U.S. —, 133 S.Ct. 1990, 1993-94 (2013).

2.      **Analysis**

a)      ***Procedural Default***

The state appellate court deemed Petitioner's due process claim based on the allegedly erroneous admission of gang evidence to be waived as a result of his trial counsel's failure to contemporaneously object to such evidence at trial.[2]  Because of that finding, Petitioner's federal claim is procedurally defaulted from federal habeas review. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment).

The Ninth Circuit has consistently recognized and applied California's contemporaneous objection rule in affirming the denial of federal habeas claims on grounds of procedural default where there were complete failures to object at trial.  See, e.g., Fairbank v. Ayers, 650 F.3d 1243, 1256-57 (9th Cir. 2011) (prosecutorial misconduct); Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005) (prejudicial admission of confession); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (instructional error). Accordingly, Petitioner's due process claim may be deemed procedurally barred unless he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.

---

[2] "Under Section 353 of California's Evidence Code, also known as the 'contemporaneous objection rule,' evidence is admissible unless there is an objection, the grounds for the objection are clearly expressed, and the objection is made at the time the evidence is introduced."  Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002). The contemporaneous objection rule requires that a "timely and specific objection" is made "in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility."  People v. Williams, 44 Cal.3d 883, 906 (1988).  The rule also prevents a defendant from appealing on a ground other than the one that formed the basis for the objection.  People v. Demetrulias, 39 Cal.4th 1, 20-22 (2006) (noting that under § 353, "[a]n objection to evidence must generally be preserved by specific objection at the time the evidence is introduced; the opponent cannot make a 'placeholder' objection stating general or incorrect grounds . . . .").

Petitioner attempts to show "cause" by claiming that he received ineffective assistance from his trial counsel, who failed to object to the introduction of the gang evidence at issue. An attorney's constitutionally deficient performance "is cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 488 (1986). To prevail on an ineffective assistance claim, a petitioner must show: (1) trial counsel's performance was deficient, i.e., it fell below an "objective standard of reasonableness" under prevailing professional norms; and (2) that he was prejudiced by counsel's deficient performance, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-94 (1984).

For the reasons discussed below in Claim Two, the Court finds Petitioner has failed to show either constitutionally deficient performance by his trial counsel or a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. Petitioner has thus failed to show cause, actual prejudice, or a fundamental miscarriage of justice to overcome his procedural default. Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003). In any event, even if Petitioner's due process claim were not procedurally defaulted, the Court finds that, for the reasons set forth in the following section, this claim fails on the merits.

### b) *Prejudicial Effect of Gang Evidence*

As he did on direct appeal, Petitioner contends in his amended petition that he was denied his due process right to a fair trial as a result of the admission of gang-related evidence. This claim is misplaced. "Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101. The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. Thus, even if the state appellate court erred in upholding the admission of gang evidence at trial, Petitioner would not be

entitled to relief, since there is no clearly established Supreme Court law for the state appellate court to contravene.  See id.; accord Pena v. Tilton, — Fed. Appx. —, 2014 WL 2611147, *1 (9th Cir. June 12, 2014) (rejecting habeas petitioner's due process claim based on the allegedly erroneous admission of gang evidence on the ground that the Supreme Court has never issued a "clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.") (citing Holley, 568 F.3d at 1101); Nieto v. Lamarque, 410 Fed. Appx. 37, 2010 WL 5605874, *2 (9th Cir. Dec. 7, 2010) (refusing to issue a certificate of appealability because "[t]here was no clearly established Supreme Court law that even repeated references to a defendant's gang affiliation can render his trial fundamentally unfair"); see also Briceno v. Scribner, 555 F.3d 1069, 1077-78 (9th Cir. 2009) (holding that the petitioner's claim of denial of due process and a fair trial based on the admission of a gang expert's testimony that crimes in question were gang-related did not contravene federal law), overruled on other grounds by Emery v. Clark, 643 F.3d 1210, 1215 (9th Cir. 2011).  On this basis alone, Petitioner's due process claim fails, as a matter of law.

The cases cited by Petitioner are inapposite.  He relies on McKinney v. Rees, 993 F.2d 1378 (9th Cir. 1993) for the proposition that, in a federal habeas proceeding arising from a state court homicide conviction, a defendant's due process rights are violated by the admission of disputed evidence when (1) the evidence was irrelevant to an essential element of the prosecution's case and (2) the admission of such evidence rendered the trial fundamentally unfair.  Am. Pet. at 34.  Applying this framework, Petitioner contends that the gang evidence was "irrelevant and inadmissible for bias" under the legal standard for admitting gang evidence allegedly set forth in United States v. Takahashi, 205 F.3d 1161, 1164 (9th Cir. 2000).  However, McKinney is a pre-AEDPA decision which specifically applied circuit law in finding a violation of due process based on the erroneous admission of evidence.  993 F.2d at 1384-85.  That decision is no longer valid after AEPDA, which now requires that the state court appellate court's decision violate clearly established Supreme Court law as a prerequisite for habeas relief.  See Hedlund v. Ryan, 750 F.3d 793,

799 (9th Cir. 2014) ("The 'only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.'") (citation omitted).  It is for that reason that the Ninth Circuit has expressly distinguished <u>McKinney</u> and other pre-AEDPA cases on the ground that a habeas petitioner "cannot rely on circuit authority to demonstrate that the right he or she seeks to vindicate is clearly established."  <u>Alberni v. McDaniel</u>, 458 F.3d 860, 864 (9th Cir. 2006); <u>accord</u> <u>Mejia v. Garcia</u>, 534 F.3d 1036, 1046 (9th Cir. 2008).[3]

The above notwithstanding, the state appellate court's ruling was not objectively unreasonable.  It is well settled that "[e]vidence of gang affiliation is admissible when it is relevant to a material issue in the case."  <u>Takahashi</u>, 205 F.3d at 1164 (citing <u>United States v. Abel</u>, 469 U.S. 45, 49 (1984)); <u>United States v. Hankey</u>, 203 F.3d 1160, 1171-73 (9th Cir. 2000) (gang affiliation evidence admissible to establish bias and coercion); <u>Windham v. Merkle</u>, 163 F.3d 1092, 1103-1104 (9th Cir. 1998) (holding that gang evidence is admissible to demonstrate a defendant's motive for participating in the alleged crimes); <u>People v. Hernandez</u>, 33 Cal.4th 1040, 1049 (2004) ("Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.").  That a witness may be afraid to testify or fearful of retaliation is relevant to his or her credibility, regardless of whether the defendant is the source of the witness's fear.  <u>United States v. Santiago</u>, 46 F.3d 885, 890 (9th Cir. 1995) (recognizing that gang-related testimony relating to the witnesses' fear of retaliation was admissible on

---

[3] For much the same reasons, Petitioner's citation to <u>Mitchell v. Prunty</u>, 107 F.3d 1337 (9th Cir. 1997), <u>overruled on other grounds in</u> <u>Santamaria v. Horsley</u>, 133 F.3d 1242, 1248 (9th Cir. 1998), another pre-AEDPA case, is unavailing.  Am. Pet. at 37-38.  In addition <u>Mitchell</u> is distinguishable.  In that case, the defendant argued and the court of appeals agreed that there was insufficient evidence to sustain his conviction, finding that membership in a gang, standing alone, was not proof of intent needed to establish aiding and abetting.  <u>Id.</u> at 1342.  In this case, Petitioner does not challenge the sufficiency of the evidence.  Rather, Petitioner's claims are predicated on the prejudicial effect resulting from the admission of gang evidence, an issue not addressed in <u>Mitchell</u>.

the issue of credibility irrespective of whether the defendant is a gang member); see also People v. Warren, 45 Cal.3d 471, 481 (1988) ("evidence that a witness is afraid to testify is relevant to the credibility of that witness and therefore admissible"); People v. Olguin, 31 Cal. App. 4th 1355, 1368, 1369 (1994) (evidence of a "third party" threat may bear on the credibility of the witness, whether or not the threat is directly linked to the defendant).

At trial, Flores and Ortiz claimed not to recollect significant portions of the events on the evening of the incident, and, in some instances, contradicted their prior statements. Notably, both witnesses acknowledged the danger in testifying against another individual. Flores, an admitted Norteño gang member, acknowledged that it was "a bad thing" for a gang member to testify against "someone else," and that he presumed that the majority of the people present at the gas station at the time of the incident also were Norteños.  While Ortiz denied being a gang member, he associated with Norteños and feared being labeled a snitch, which could, in turn, lead to reprisals against him and his family by gang members. This testimony clearly provided a foundation upon which the prosecution could properly challenge their credibility and provide context to their claimed lack of recollection.

Petitioner argues that the gang evidence was "irrelevant and inadmissible" under Takahashi.  Am. Pet. at 34.  In that case, the defendant appealed his conviction on drug trafficking crimes, claiming that evidence regarding his affiliation with the Yakuza gang, while admittedly relevant, should have nonetheless been excluded under Federal Rule of Evidence 403 on the ground that the prejudicial effect of such evidence outweighed any probative value.  Id. at 1164.  At trial, the defendant called an exculpatory witness, who conceded that both he and the defendant were Yakuza gang members, but denied taking any oaths of loyalty.  Id.  In response, the Government introduced expert testimony that Yakuza members do indeed swear oaths of total loyalty and have been known to "take the blame" for other Yakuza members.  Id.  In addressing the defendant's claim of undue prejudice, the Ninth Circuit observed that the witness's admission that he and the defendant were members of the same gang provided a foundation for the admission of gang affiliation evidence.  Id.  While recognizing that this evidence was prejudicial "as, indeed, most

evidence should be," the Ninth Circuit ultimately rejected the defendant's Rule 403 claim on the ground that any potential undue prejudice was ameliorated by the limiting instruction given by the district court.  Id. at 1165 (citing Abel, 469 U.S. at 54-55).

In the instant case, Petitioner contends that there was no evidence that he was a member of a gang or that he or any witness had taken an "oath of silence," the only witness shown to be a gang member was Flores, and no limiting instruction was given.  Am. Pet. at 35.  This argument misses the point.  Both Takahashi and Abel involved a theory of relevance based on gang loyalty as a result of the defendant and the exculpatory witness being members of the same gang.  Here, the prosecution's theory of relevance was the witnesses' credibility was compromised, not as a result of their membership in the same gang, but the fear of reprisal by gang members.  See United States v. Keys, 899 F.3d 983, 987 (10th Cir. 1990) (holding that while the defendant and witness must be a member of the same gang to show bias based on common membership in a group, no such requirement exists to admit evidence to demonstrate bias based on fear of reprisal); see also Blackmon v. Booker, 696 F.3d 536, 554 (6th Cir. 2012) ("One need not have a degree in criminal justice to understand the violent and retributive nature of urban street gangs, often at the expense of innocent victims").  Such fear was directly relevant and probative of Flores and Ortiz's inconsistent testimony and claimed lack of recollection.[4]

Petitioner next argues that, setting aside the issue of credibility, most of the prosecution's gang evidence was improperly offered as character or propensity evidence.  Am. Pet. at 35, 37.  Assuming that the evidence admitted by the trial court was purely

---

[4] Even if the state appellate court's decision is contrary to Abel or Takahashi, Petitioner would not be entitled to relief.  Both cases applied the Federal Rules of Evidence, not the Constitution. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68. The Federal Rules of Evidence are "nonconstitutional" sources of law.  Dowling v. United States, 493 U.S. 342, 352 (1990).  Accordingly, a violation of the Federal Rules of Evidence does not constitute a violation of the Constitution.  Id. at 352-54 (holding that the failure to comply with Fed. R. Evid. 404(b) did not violate due process).  Thus, even if Petitioner were correct in arguing that the state court's ruling conflicts with Abel and Takahashi, he would have done no more than establish an an error for which AEDPA provides no relief.

character or propensity evidence and not relevant to any other issue, as discussed, AEDPA precludes federal habeas relief because the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process. See Holley, 568 F.3d at 1101; Alberni, 458 F.3d at 864 (citing Estelle, 502 U.S. at 75 n.5); Mejia, 534 F.3d at 1046. *A fortiori*, Petitioner can show neither that the state appellate court's decision is contrary to nor amounts to an unreasonable application of clearly established federal law. See Knowles v. Mirsayance, 556 U.S. 111, 112 (2009) (holding that "it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court").

### c) *Fundamentally Unfair*

Even if the gang evidence should have been excluded and there was clearly established Supreme Court precedent on point, Petitioner has failed to show that the admission of such evidence rendered the trial fundamentally unfair. See Fry v. Pliler, 551 U.S. 112, 119-22 (2007) (holding that even where evidence was wrongly admitted, a petitioner must still show prejudice; that is, that the evidence had a substantial and injurious effect or influence on the verdict and resulted in actual prejudice). The state court of appeal explained:

> Even if we were to find that not all of the gang evidence should have been admitted and that the admission of some of the gang evidence was erroneous, we cannot say that it made the trial fundamentally unfair.
>
> ….
>
> There was ample evidence of defendant's involvement in the fighting that resulted in Yuen's fatal stab wounds. [Walter] Jusino identified defendant at trial as the person who stabbed Yuen, defendant admitted that he had a knife and slashed out at those involved in the fighting, and defendant admitted that he fled to Mexico because he believed he could have been the person who stabbed the person who died. . . . The jury found defendant not guilty of first degree murder, and thus found that defendant's admitted actions were not willful, deliberate, or premeditated. As it is not reasonably probable the verdict would have been more favorable to defendant absent the admission of the gang evidence, defendant has not shown that he was

1
2

> prejudiced by admission of the evidence or by counsel's failure
> to object to the admission of the evidence.

3    The state appellate court's finding is well supported by the record.  Apart from the

4 gang evidence, the prosecutor's case presented significant evidence to support a guilty

5 verdict.  Petitioner claimed that the stabbing was unintended, and occurred when he

6 "wildly" swung his knife.  RT 1261-62, 1263, 1265, 1280, 1363, 1376-377, 1396, 1416,

7 1420.[5]  Yet, Petitioner's account is contradicted by evidence that Yuen suffered two deep

8 incisions—one into the lung and heart, the other into the aorta—through the front of his

9 body.  RT 1544, CT 151.  Given the directness of these puncture wounds, coupled with the

10 lack of any other lacerations on Yuen's body, Petitioner's claim that he simply was

11 swinging his knife strains credulity.  Moreover, Jusino, who had just met Yuen on the

12 evening of the incident, testified that he saw Petitioner angrily exit the Honda immediately

13 after Yuen slapped the car, and made a "straight B-line" towards Yuen and attacked him

14 without apparent provocation.  RT 913; accord RT 841, 845 (testimony of Joshua Parras

15 who stated that he saw Petitioner get out of the car and aggressively attack Yuen).  Jusino

16 also testified that Petitioner "slammed" a knife into Yuen's body.  RT 905, 912-915, 921-

17 922, 995.

18    In view of the compelling evidence presented at trial, any purported error by the trial

19 court in allowing the gang evidence was harmless.  See Moses v. Payne, 555 F.3d 742 (9th

20 Cir. 2009) (holding that, in light of strong evidence of guilt, tainted evidence was harmless

21 under Brecht v. Abrahamson, 507 U.S. 619 (1993)); Jackson v. Brown, 513 F.3d 1057,

22 1082 (9th Cir. 2008) (concluding that the erroneous admission of evidence did not render

23 the trial fundamentally unfair where the significant evidence of the petitioner's guilt); see

24 also United States v. Rodriguez, -- F.3d --, 2014 WL 4401221, *14 (9th Cir. Sept. 8, 2014)

25 (holding that although the trial was "permeated with references to . . . gang affiliations,"

26 such references were not unduly prejudicial where "the Mexican Mafia was not the entire

27

28

---

[5] Petitioner was the only witness to testify for the defense.

theme of the trial, so as to infect the trial with the threat of guilt by association") (citation omitted).

Petitioner cites Kennedy v. Lockyer, 379 F.3d 1041 (9th Cir. 2004) for the proposition that "evidence relating to gang involvement will almost always be prejudicial and will constitute reversible error." Am. Pet. at 39 (quoting Kennedy, 379 F.3d at 1055). The cited language is dicta.  In Kennedy, the petitioner was tried twice on drug charges, with the first trial ending in a hung jury.  379 F.3d at 1042-43.  At the first trial, the court expressly excluded evidence of his gang involvement.  Prior to the retrial, petitioner's new attorney twice attempted unsuccessfully to obtain a full transcript, which would have included the court's evidentiary rulings.  Id.  Aware that the new attorney did not have the full transcript, the prosecutor introduced evidence at the second trial intended to show the petitioner's gang involvement, even though that evidence had been excluded from the first trial.  Id.  After the California Court of Appeal affirmed the conviction and the California Supreme Court denied review, the petitioner sought habeas relief, claiming that "his Fourteenth Amendment right to due process and equal protection was violated when the state court denied his request for the full transcript of his first trial."  Id.

On appeal, the petitioner was granted habeas relief based on the court's finding that he was entitled to a full transcript of the prior proceedings; that the state court's decision was contrary to clearly established federal law; and that the denial of a complete transcript here had a substantial and injurious effect on the jury's verdict.  Id. at 1049, 1052, 1054. Importantly, the Ninth Circuit has since made clear that Kennedy does not stand for the proposition that the introduction of gang evidence necessarily is unduly prejudicial and requires reversal.  Rodriguez, 2014 WL 4401221, *15 (holding "that the district court did not abuse its discretion in admitting evidence pertaining to the connection between the Surefios and the Mexican Mafia as relevant to Appellants' motive in attacking [the victim]").  The Rodriguez court noted that Kennedy "did not address an evidentiary challenge to gang affiliation evidence," but simply held that "a habeas petitioner was prejudiced because the attorney for his retrial was not provided a complete trial transcript

that included the trial court's prior ruling excluding such evidence." Id.  Unlike Kennedy, this case does not involve any conduct by the prosecution which rendered the trial fundamentally unfair.

In sum, the Court finds no basis for habeas relief on Petitioner's claim that the admission of gang evidence violated his right to due process.  Relief on Claim One is DENIED.

**B.   INEFFECTIVE ASSISTANCE OF COUNSEL**

**1.   Legal Standard**

A claim for ineffective assistance of counsel under the Sixth Amendment is reviewed under the two-prong test set forth in Strickland.  Under the first prong, the defendant must show "that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.

To satisfy the second prong under Strickland, petitioner must establish that he was prejudiced by counsel's substandard performance.  See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694).  Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different."  Id. Judicial scrutiny of counsel's performance is "highly deferential."  Id. at 689.  A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied.  Id. at 697.

**2.   Analysis**

On appeal, Petitioner claimed that his counsel rendered ineffective assistance by failing to object to the introduction of the gang evidence.  In addressing this claim, the state appellate court applied the standard set forth in People v. Maury, 30 Cal.4th 342, 389

(2003), which is based on and recites the same standard for ineffective assistance of counsel as in Strickland.  The court rejected Petitioner's claim on the ground that it would have been futile for counsel to have interposed such an objection.  The court explained as follows:

> Evidence of gang membership, and the conduct associated with that membership, is relevant if such evidence tends logically, naturally, and by reasonable inference to establish a motive in a gang-related crime or to fortify the testimony of witnesses who have identified the defendant as a participant in the crime. . . . In addition, testimony that a witness is fearful of gang retaliation is admissible evidence relating to the witness's credibility.
>
> "[A]dmission of gang evidence over an Evidence Code section 352 objection will not be disturbed on appeal unless the trial court's decision exceeds the bounds of reason."
> ….
> As the gang evidence was relevant and could have survived an Evidence Code section 352 objection, we reject defendant's claim that his trial counsel provided ineffective assistance by failing to object to the introduction of the evidence on Evidence Code section 352 grounds.  Counsel cannot be found incompetent for failing to make futile motions or objections.

Torres, 2009 WL 5070167, *12 (citations omitted).

Petitioner now argues that all the gang-related evidence was "irrelevant" and highly prejudicial, and as such, his counsel was ineffective in failing to object to the introduction of such evidence.  This argument fails for the reasons set forth above—namely, that the gang evidence was material and admissible in light of the issues presented and that any prejudice flowing from such evidence ultimately was harmless.  Petitioner's argument also construes a claim for ineffective assistance of counsel through the wrong lens.  Under AEDPA, a federal court is not to exercise its independent judgment in assessing whether the state court decision applied the Strickland standard correctly; rather, the petitioner must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.  Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1403 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential.").  The

Supreme Court has specifically warned that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether ***there is any reasonable argument*** that counsel satisfied <u>Strickland</u>'s deferential standard."  <u>Harrington v. Richter</u>, 562 U.S. 86, __, 131 S.Ct. 770, 789 (2011) (emphasis added).

Here, Petitioner has failed to show that the state court of appeal applied the <u>Strickland/Maury</u> standard for ineffective assistance of counsel in an objectively unreasonable manner.  The state appellate court explained that while gang evidence may be inflammatory, California law permits the admission of such evidence in certain circumstances, such as those presented in this case.  In addition, such testimony may be germane to a witness's credibility as a result of his fear of gang retaliation.  The state appellate court was thus reasonable in concluding that trial counsel was not ineffective in failing to object to testimony that was proper under California law and did not violate Petitioner's right to due process.  <u>See</u> <u>Morrison v. Estelle</u>, 981 F.2d 425, 429 (9th Cir. 1992) (the failure to make a futile objection does not constitute ineffective assistance of counsel).[6]

Nor has Petitioner shown that the state appellate court had no reasonable basis for finding that he failed to show prejudice.  Petitioner was convicted of second degree murder, which is murder "committed with malice but is not premeditated[.]"  <u>People v. Prince</u>,  40 Cal.4th 1179, 1265-266 (2007).  As the state court of appeal reasonably found, compelling evidence was presented to support a second degree murder conviction, including

---

[6] Defense counsel also may have chosen not to object as a matter of strategy, given the trial court's rejection of his initial objection to the gang evidence.  Repeatedly objecting to gang evidence could potentially have drawn more unwarranted attention to the issue.  <u>See, e.g.</u>, <u>Charles v. Thaler</u>, 629 F.3d 494, 502 (5th Cir. 2011) (holding that counsel's decision not to draw undue attention to testimony by objection was a reasonable trial strategy).  Whatever defense counsel's rationale, the Court must presume that he provided effective assistance.  <u>See</u> <u>Bell</u>, 535 U.S. at 698 ("a defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.") (internal quotations omitted).

eyewitness testimony that Petitioner was the initial aggressor, Yuen did not provoke the attack, and Petitioner stabbed Yuen twice.  Id.  Based on the record presented, it was not unreasonable for the state appellate court to conclude that the outcome at trial would not have been any different had counsel successfully objected to the gang evidence.  See Harrington, 113 S.Ct. at 792 (finding the state appellate court's finding that the defendant was not prejudiced by the alleged deficient performance of counsel where there was circumstantial evidence of defendant's guilt and no evidence directly refuting the opinion of the prosecution's expert).

In sum, the Court finds no basis for habeas relief on Petitioner's claim for ineffective assistance of counsel.  Relief on Claim Two is DENIED.

### C.   CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case.  For the reasons set out above, no jurist of reason would find this Court's denial of Petitioner's claims "debatable or wrong."  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## IV.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT the First Amended Petition for Writ of Habeas Corpus is DENIED as to all claims, and a certificate of appealability will not issue.  The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated:  9/18/14

SAUNDRA BROWN ARMSTRONG
United States District Judge